WeldoN, J.,
delivered the opinion of the court:
This is a proceeding under the act of June 16, 1880, entitled “An act to provide for the settlement of all outstanding claims against the District of Columbia, and conferring jurisdiction on the Court of Claims to hear the same, and for other pur *378 poses” (21 Stat. L., 284), as amended, by the act of February 13, 1895, entitled “An act to amend said act.” (28 Stat. L., 664.)
In the former trial of this case judgment was rendered for claimant, but no allowance was made for board rates.
The claimant, on the 3d day of April, 1895, filed a motion for a new trial, which was allowed on April 8, 1895.
In the retrial of the cause the court makes the foregoing’ findings, and upon those findings gives a judgment for eight thousand six hundred and sixty-four dollars and nineteen cents.
The act of February 13,1895, under which the motion was made and allowed, is as follows:
“That in the adjudication of claims brought under the provisions of the act entitled ‘An act to provide for the settlement of all outstanding claims against the District of Columbia, and conferring jurisdiction on the Court of Claims to hear the same, and for other purposes,’ approved the sixteenth of June, eighteen hundred and eighty (Twenty-first Statutes at Large, page two hundred aud eighty-four), the Court of Claims shall allow the rates established and paid by the Board of Public Works; and that whenever said rates have not been allowed the claimant or his personal representative shall be entitled, on motion, made within sixty days after the passage of this act, to a new trial of such cause.”
Two questions have arisen in the litigation incident to said act. First, whether a party dissatisfied with the former judgment is entitled in the new trial to litigate the whole case, and thereby compel the court to reexamine the evidence upon the whole case and determine anew the rights of parties upon all the items of the claim.
Second, whether the form of judgment under the amendatory act is the same that was adopted by the court under the original act, the effect of which judgment was to give the party interest from the time the claim was due and payable. It is insisted by counsel for the defendant that the judgment to be rendered in the new trial shall operate in prcesenti, and not retroactively, as under the act of original jurisdiction.
As to the first question: Under the amendatory act of 1895 it is made the duty of the court to grant a new trial in cases where board rates were not allowed, confining the power and jurisdiction of the court to such cases alone; and in cases where *379 sucli rates were allowed, tlie court is without jurisdiction to grant a new trial.
The purpose of the amendatory act was to give a remedy to parties who had not obtained in the former litigation the benefit of board rates, and thereby to place them upon an equality with parties who had by the judgment of the court been allowed such rates in the adjustment of their rights against the defendant. In the passage of the act of 1895, Congress did not intend to open for reinvestigation all the cases which had been settled in the litigation under the act of 1880, and thereby subject the court and the parties to the onerous duty of a reexamination of all the cases upon all the questions incident to the litigation. The act of 1895 is not predicated upon the theory that the court made a mistake either as to the facts or the law upon which the judgment was founded. Congress did hot assume in the passage of the amendment to the act of 1880 that there was error of fact or of law in the judgments rendered.
This court had found the facts in the cases, and upon those facts had given a judgment upon a certain theory of the law, which in the cases hereinafter cited was determined by the Supreme Court to be a correct determination of the legal rights of the parties. The duty of the court in the new trial is to allow board rates upon the items of the claims heretofore established by the findings of the court, when board rates were established, as to such items, and the claimant has not recovered such rates, but only recovered contract rates. The power and jurisdiction of the court is circumscribed to the application and allowance of board rates as to items of claim entitled to board rates under the new act, and which have been by the former judgment of the court subjected to the application of contract rates.
In this construction of the act of 1895, the court is not deprived of that common-law power incident to courts to correct clerical errors and mistakes. That power is incident to all courts, to be exercised when the condition of the case is such that it can be.
As to the second question: The form of the judgment. Under the original act of June 16, 1880, the judgments were to be paid in 3.65 bonds authorized by the Act of June 20, 1874 (18 Stat. L., 120). By the act of June 16, 1880, it is provided *380 that before the delivery of such, bonds in payment of judgments, the coupons shall be detached from the date of such bonds to the day upon which the claim was due and payable. The form of the judgment under the original act stated the date when the claim was due and payable, and from that date the bonds were to bear interest by having attached to them such coupons as represented the interest from that date.
At the time the judgment was rendered in the former hearing, the legal right of the claimant to compensation was measured by the terms of his agreement, and not by the acts of the Board of Public Works in dealing with similar work. It was so decided by this court in this and many other cases. In the case of Barnard, administrator, v. The District of Columbia (20 C. Cls. R.,257), it is held that the act of the Board of Public Works in establishing prices could not control an express contract subsequently made, and that an overpayment made by the Board of Audit might be recovered back. That case went to the Supreme Court and was affirmed.
The Supreme Court in substance held, that the entry in the journal of the board could not affect the plaintiff’s contract, that the board could not in that way either make a new contract or alter the one previously made so as to bind the District. (Barnard v. District of Columbia, 127 U. S., 409.) In the case of Barnes v. District (22 C. Cls. R., 366), this court decided the same general principle, and that case was referred to and approved by the Supreme Court in the Barnard Case.
It is insisted that, although the act of February, 1895, is a remedial statute, it must be strictly construed, inasmuch as the allowance of board rates by that statute was a mere gratuity and therefore the law should not be extended by liberal construction beyond the technical right of board rates, to be recovered as of the date of the rendition of the judgment. The purpose for which the act of 1895 was passed is clearly set forth in the report of the Senate committee reporting the bill in a letter of the president of the Board of Commissioners of the District of Columbia, embodied in said report, a portion of which is as follows:
“ The Board of Public Works, which was created by the act of Congress entitled ‘An act to provide a government for the District of Columbia,’ approved February 21, 1871, was charged with the entire control of municipal improvements in said District. The execution of these improvements was done *381 under contracts with the Board of Public Works, and at prices fixed by it.. Several months after the commencement of these works the said board readjusted the contract price. These revised prices were technically called ‘board rates.’ In most} cases where‘board rates’were allowed, the modification of the contract so made was embodied in a written agreement in due form; in others, by written or oral orders or correspondence, which, through clerical inadvertence or other causes, not affecting the intention of the contracting parties in the premises, had not reached the stage of a formal contract.
“Upon the abolition of the Board of Public Works, nearly all of the work in progress under contracts with that board at the time was suspended. Subsequently, most of this unfinished work was recommenced and completed at board rates under new contracts, denominated ‘extensions’ of the suspended contracts, made with the Board of Commissioners which succeeded the Board of Public Works. The claims under consideration were mainly for compensation for work done under these so-called extensions. The duty of auditing the unsettled accounts of the Board of Public Works after its abolition, and the accounts for work done under the aforesaid extensions of contracts, was imposed by law upon a Board of Audit, composed of the First Comptroller and the (First Auditor) Second Comptroller of the United States Treasury Department. This board audited and allowed accounts for work done at ‘board rates’ under the informal authority of the Board of Public Works hereinbefore mentioned, thus adopting without material qualification a practice which appears to have been uniformly pursued by the latter board.
“The Board of Audit was evidently invested with complete and conclusive jurisdiction in the adjustment of accounts passed upon by it under that law. The statute made it the duty of the board ‘to examine the audit for settlement all the unfunded or floating debt of the District of Columbia and the Board of Public Works,’ therein specified, among which were: ‘ Fourthly, claims existing or hereafter created for which no evidence of indebtedness has been issued arising out of contracts, written or oral, made by the Board of Public Works ’ (Stat. at L., vol. 18, p. 118); ‘fifthly, claims for which no evidence of indebtedness has been issued arising out of contracts, written or oral, made by or on behalf of the District of Columbia,’ and issue to each claimant a certificate stating the amount found to be due to each, and on what account. (Stat. at L., vol. 18, p. 118.)
“The Board of Audit was abolished March 14, 1876 (U. S. Stat., vol. 19, p. 211), and jurisdiction over the claims under consideration vested in the United States Court of Claims by an act approved June 16, 1880. (U. S. Stat., vol. 21, p. 284.) The Court of Claims appears to have at first inclined to favor the application of equitable principles to the adjudication of *382 these claims; but its later decisions show a different ruling in this respect, mainly on the strict technical grounds that the allowance of rates different from those in the formal written contracts was incompatible with the law, which required all contracts of the Board of Public Works to be in writing. When contractors who had been paid at the ‘board rates’ for work done under the informal agreement referred to applied to the Court of Claims for payments for work done under their new contracts, or so-called ‘extensions’ of contracts, they were met by a ruling on behalf of the District for a set-off against the sum found due them, of the amount so paid them in excess of the rates specified in their formal contracts with the Board of Public Works. So long as that court persists in the ruling it has made in these cases, these claimants can only obtain relief through further action by Congress. Notwithstanding the fact that they took timely advantage of the act of Congress authorizing them to submit their cases to that court, the statutes of limitations would prevent them from obtaining a hearing in the District courts. If the measure recommended by the Commissioners should be enacted, no special appropriation would be required to pay judgments that might be rendered under it.”
If we assume as the basis and reason of the act of 1895, the facts and condition of the claims as set forth in this letter, we are enabled to discern with clearness the character of the claim now asserted by the claimant. In the litigation under the act of 1880, the court properly applied the terms of the contract to work done under express agreements, and allowed a compensation measured by the terms of such agreements, thus discriminating between contractors who were paid board rates and those contractors who were to be compensated according to the strict requirements of their contracts. As is said in the letter of the president of the board, embodied in and adopted in the report of the committee, the Court of Claims determined the right of the contractors “mainly on strict technical grounds that the allowance of rates different from those in the formal written contracts was incompatible with the law which required all contracts of the Board of Public Works to be in writing.” Under that application of the law, certain contractors were not only denied the right of recovery of board rates, but where an allowance liad been made the District pleaded such excess as a counterclaim and recovered under that plea.
Unforeseen difficulties had arisen in the performance of the work, and to relieve parties from that hardship board rates were established, but certain parties had contracted to do the *383 work at a stipulated price and were not relieved from the hardship by the fact that a condition had arisen not anticipated by them when they entered into their agreements. The technical terms of the law requiring all contracts to be in writing bound them to the strict letter of their agreements and measured their compensation by the obligations of the contract, thus excluding them from all participation in the increased equitable rates established and paid by the Board of Public Works.
The act of 1895, providing for a new trial where board rates were not allowed, was intended to relieve parties from the consequence of being held to the strict and technical requirements of their contracts and the law, and to afford them grounds of equitable relief in the recovery of board rates.
In the opinion of Congress (considering all the circumstances under which the labor was performed and the increased hardship upon which board rates were established and paid), there was upon the part of persons bound by and receiving contract rates, an equitable claim for relief, and upon that theory the act of 1895 was passed as an amendment to the act of 1880.
The relief afforded by the new trial is not therefore a mere gratuity, but the recognition of a legal right founded upon an equitable claim, which could not be enforced so long as the act of 1880 remained unamended and the Court of Claims was compelled to adjust the rights of parties upon the strict requirements of contracts and the terms of existing law. The purpose of the amendment is to establish and grant an equality of right between those entitled to receive board rates under the law as it existed prior to its enactment and those persons doing the same character of work who were compelled to receive less on account of the enforcement against them of the strict requirements of their agreements.
The act of 1895 is an amendment to the act of 1880, and becomes a part of that act in the determination of cases which have not been tried and in cases where new trials are granted.
The rights of the parties are subjected to all the provisions of the act of 1880, and the provisions of the act of 1895, which by the allowance of board rates has enlarged the rights of claimants from contract to board rates.
By the act of 1880 the claimant is entitled to receive in payment certain bonds with the interest coupons detached from the date of such bond to the time when such claim became *384 due and payable. The effect of the act of 1880 was to allow interest at the rate of the bond from the time the claim was due and payable to the time of the rendition of the judgment; and so, in accordance with that rig’ht or requirement, the judgment of the court recited the time when the claim was due and payable, so as to indicate to the Department to what period the coupons were to be detached in the satisfaction of the judgment of the court.
The payment in that form gave to the claimant a substantial and material element of compensation for the labor which had been performed for the defendants, and was, in effect, the allowance of interest from the time when the claim should have been paid to the time the judgment was obtained.
It must be assumed that it was known to Congress that such had been the practice of the court under the act of 1880, and Congress not having made any provision in the act of 1895, changing the act of 1880, as to payment and the form of the judgment which by judicial construction was adopted, it is safe to conclude that it was not intended to differentiate the rights of the parties in judgments rendered under the act of 1880, as amended by the act of 1895, from the rights of parties as to board rates under the act of 1880.
As we have said, equality was recognized as the equitable right of the parties heretofore bound by the strict requirements of their contracts, and that equality must be preserved to the full extent of the rights heretofore given parties recovering compensation upon the basis of board rates.
It is the opinion of the court that the proper judgment to be entered is the form adopted heretofore in cases where judgments have been entered against the defendants in suits determined under the act of 1880.